CARMICHAEL–LYNCH–NOLAN AD-
VERTISING AGENCY, INC., and
Tony Nolan, Appellants,

v.

BENNETT & ASSOCIATES,
INC., Appellee.

Court of Appeals of Kentucky.

Oct. 21, 1977.

As Modified Nov. 2, 1977.

Rehearing Denied Feb. 10, 1978.

John F. Rogers, Nold, Mosley, Clare & Rogers, Louisville, for appellants.

William A. Miller, Leslie D. Aberson, Washer, Kaplan, Rothschild, Aberson, Miller & Dodd, Louisville, for appellee.

Before HAYES, HOGGE and LESTER, JJ.

LESTER, Judge.

On July 5, 1972, Bennett & Associates, a Kentucky Corporation, brought suit against Carmichael-Lynch-Nolan Advertising Agency, a Missouri Corporation, and Tony Nolan, a resident of Missouri, for intentional interference in the contractual relationship Bennett had formed with Woodson Bend, Inc. Bennett notified the out of state defendants by service of process on the Secretary of State under KRS 454.210. C-L-N and Nolan, in their answer, asserted that the court did not have jurisdiction over them; however, the court overruled their motion to quash the summonses. C-L-N then counterclaimed for a portion of the fees Bennett collected from Woodson Bend. The court having heard the proof without a jury awarded Bennett a total of $27,070.00 for the years 1972 and 1973 subject to a credit of $813.92 for fees owed by Bennett to C-L-N and retained the case on the docket should any damages arise in 1974. Counsel did not deem it necessary to have the testimony transcribed.

Appellants continue to challenge the court's jurisdiction over them. The appellants' other main points of contention center on whether the court incorrectly applied the legal standard of intentional interference with contract rights and committed clear error in its findings of fact.

We summarize the trial court's recital of the facts as follows.

In March of 1971, Woodson Bend engaged Bennett & Associates by oral agreement to conduct advertising and public relations in preparation for the opening of Woodson Bend Resort Club at Lake Cumberland. For this work, Bennett received payment of $12.50 per hour, one half of its usual fee. This reduction reflected the understanding that Bennett would do the advertising and public relations for the project for a period of three to five years.

William Clarkson, III, the Vice-President of Woodson Bend, had sole responsibility for advertising and public relations. Clarkson had dealt with Tony Nolan of Carmichael-Lynch-Nolan Advertising Agency in a similar venture which proved unsuccessful and caused Nolan a loss. Out of this prior contact, Clarkson felt some obligation to Nolan. Clarkson informed Tevis Bennett of Bennett Associates that C-L-N would handle a portion of the advertising.

On February 9, 1972, Woodson Bend entered into a contract with the firms of Bennett and C-L-N concerning the total advertising and public relations program which Bennett and C-L-N agreed to carry out as a joint venture. The contract made a general division of duties putting Bennett in charge of media placement, public rela-

tions, publicity, printing and client billing while C-L-N would take care of copywriting for radio, television and newspapers, production for radio and television, newspaper artwork and collateral material design. They would make a combined effort in other areas. For their efforts, they would get $600.00 per month for public relations and payment for advertising work at a schedule of rates which came to approximately 15% of the advertising budget. They would share all compensation equally.

The relationship worked smoothly for about three months. Bennett arranged the placing of advertising and reserved prime time radio and television spots. However, it appears Nolan became dissatisfied. At the end of April, Nolan met with Clarkson and George Brown, President of Woodson Bend, at Clarkson's home. During this meeting, Nolan induced Woodson Bend to release C-L-N from the contract of February and allow it to do all the advertising work. They agreed that Bennett could bid on the public relations aspect. The meeting occurred without Bennett's knowledge. Nolan called Tevis Bennett and told him he should talk to Clarkson. When Clarkson informed Bennett of the new arrangement, Bennett considered himself out of the operation. On May 5th, C-L-N sent Bennett a letter notifying Bennett that C-L-N had withdrawn from the agreement to take care of all the advertising because of economic reasons. Bennett later received a conference report from C-L-N which indicated the occurrence of the meeting and its outcome.

Nolan stated that C-L-N desired to drop the joint venture due to Woodson Bend's reduction of its advertising budget to $80,000.00. However, the actual advertising budget for 1972 turned out to be $142,000.00, 15% of which went to C-L-N in fees. The budget and the fees remained the same for 1973. In 1974, Woodson Bend provided C-L-N with a retainer of $2,000.00 per month.

■ The appellants had sufficient contacts in Kentucky to bring them within the jurisdiction of the trial court. The parties executed the contract in Kentucky. Al-

though C-L-N may have done a good deal of the preparation for the advertising outside of the Commonwealth, the great bulk of the material was designed for dissemination in Kentucky. Also the meeting at which Nolan, on behalf of C-L-N, induced the breach occurred in Kentucky. The alleged tortious interference in Kentucky of contract rights created and to be performed in Kentucky comes within the bounds of KRS 454.210(2)(a)3, "[c]ausing tortious injury by an act or omission in this Commonwealth" and therefore subjected the appellants to the jurisdiction of the court below.

■ Appellants' attack on the trial court's findings of fact must fail. After the trial, they attempted to interject testimony of Clarkson into the record by affidavit. The Supreme Court, by order entered January 21, 1976, struck this affidavit from the record. Consequently, we cannot consider it. Because we have neither a transcript of testimony nor a condensed statement in narrative form of the testimony provided for by CR 75.03, we have to assume that the evidence supported the findings of the lower court. *Porter v. Harper*, Ky., 477 S.W.2d 778 (1972). The discovery depositions contained in the record do not take the place of the narrative statement since we have no way of knowing whether the witnesses changed their testimony before the court.

■ Appellants' argument of inconsistency in the lower court's findings has no merit. The court made findings of fact and conclusions of law on May 31st. On June 3rd, the court again made findings of fact and conclusions of law. The appellant attempts to set out conflicts between the two. We need only point to CR 52.02 which states in part

[n]ot later than 10 days after entry of judgment the court of its own initiative . . . may amend its findings or make additional findings and may amend the judgment accordingly.

We attach no relevance as to who actually drafted what findings of fact or which conclusions of law.

■ A party damaged by interference with his contract rights can recover even though he cannot establish fraud or coercion or a master servant relationship. *Derby Road Building Co. v. Commonwealth*, Ky., 317 S.W.2d 891 (1958) and *Coca-Cola Bottling Works v. Hazard Coca-Cola Bottling Works*, Ky., 450 S.W.2d 515 (1970) indicate a change in the law since *Brooks v. Patterson*, 234 Ky. 757, 29 S.W.2d 26 (1930). *Walt Peabody Advertising Service, Inc. v. Pecora*, D.C., 393 F.Supp. 328 (1975) contains an excellent analysis of the transition. Dictum in *Brooks, supra*, 234 Ky. at 762, 29 S.W.2d at 28 stated "[o]nly those who are parties to or in some manner bound by the contract are liable for breach thereof, although the third party may have been actuated by malicious motives." However, a closer reading reveals that an action would lie if the defendant procured the breach by deception or coercion or caused a severance of the master servant relationship. The departure came in *Derby Road Building Co., supra*, overruled on other grounds in *Foley Construction Co. v. Ward*, Ky., 375 S.W.2d 392, 396 (1963). Of interest to us is Derby Road Building's appeal from an unfavorable summary judgment in its suit against utility companies whose failure to remove their installations Derby claimed caused a delay which under its contract resulted in its liability for liquidated damages. The court affirmed but wrote the following at 895:

> Ordinarily only those who are parties are liable for the breach of contract, and the parties cannot impose any liability upon a stranger to the contract under its terms. As strangers to this contract, the utility companies could be held liable only for having wrongfully procured or induced the Department of Highways not to perform its contract. Such liability is predicated upon an intentional interference, malicious or without justification with known contractual rights possessed by the party suing to recover damages therefor.

Unfortunately, the court referred to *Brooks v. Patterson, supra*, and authorities cited therein as standing for this proposition.

But juxtaposed with *Brooks v. Patterson, supra*, the court cited Restatement, Torts, § 766. *Coca-Cola Bottling Works, supra*, again recognized the tort, but found that no substantive evidence showed an inducement to cancel the contract. We feel confident that *Brooks v. Patterson, supra*, no longer governs and that the Restatement of Torts § 766 presents the correct guidelines. § 766 provides,

> [e]xcept as stated in Section 698, one who, without a privilege to do so, induces or otherwise causes a third person not to
>
> a) perform a contract with another, or
>
> b) enter into or continue a business relation with another is liable to the other for the harm caused thereby.

The lower court could reasonably conclude Nolan and C-L-N not justified in persuading Woodson Bend to permit C-L-N to handle all the advertising to the exclusion of Bennett.

■ Damages in this case should not exceed Bennett's lost profits. It appears that the court awarded Bennett the fees it would have received without taking into account its cost. We reverse only so that damages can be recomputed.

The discussion in *Orr v. Coleman*, Ky., 455 S.W.2d 59 (1970) of apportionment between joint tort-feasors relates only to jury trials.

The judgment is reversed in part and affirmed in part.

All concur.