**Dr. Robert H. CULLEN, M.D. and Robert H. Cullen, P.S.C., Appellants,**

v.

**SOUTH EAST COAL COMPANY, Appellee.**

Court of Appeals of Kentucky.

Dec. 9, 1983.

Rehearing Denied March 2, 1984.

Discretionary Review Denied by Supreme Court Nov. 9, 1984.

Forrest E. Cook, Whitesburg, for appellants.

James W. Craft, Polly, Craft, Asher & Smallwood, Whitesburg, for appellee.

Before DUNN, LESTER and McDONALD, JJ.

McDONALD, Judge:

This appeal comes to us from a directed verdict granted in favor of South East Coal Company. Dr. Robert Cullen had instituted an action against South East Coal Company for interference with prospective business advantage and libel. The directed verdict was granted after Dr. Cullen's proof was completed and the jury heard the following facts:

### Facts

Dr. Cullen was born as an American in the Philippines. He studied medicine in the Philippines and took his internship in Chicago and then his residency in southwest Virginia. After duty in the Air Force he took over a medical practice in Whitesburg, Kentucky. In February, 1976, he incorporated as a public service corporation (P.S.C.).

South East Coal Company is one of the oldest and largest employers in and around Letcher County, Kentucky. In April, 1977, South East Coal initiated a very progressive and foresighted medical and health benefits plan for its employees and members of their families. There were about 700 people in the plan, and under the provisions of the plan South East Coal paid 100 percent of the participants' health care costs. Cards were issued to the employees and their family members, who were authorized to present the card to the health care provider and the bills would be forwarded to South East Coal Company.

In the latter part of 1977, Dr. Cullen had occasion to treat a family for lice at his clinic. Bills were forwarded to South East Coal Company which included one made by mistake for the father of the family whom Dr. Cullen admittedly did not treat.

On November 3, 1977, Margaret Trent, an employee of South East Coal, called Dr. Cullen about the bill, and an argument between the two resulted. Dr. Cullen admitted the error on the billing, but he was accused of charging too much. According to Dr. Cullen's testimony, Mrs. Trent said, "I'm going to do something about that." She then banged the phone down which ended the conversation.

Later, the same day, a memo was given to all employees and signed by the vice-president of South East Coal Company, which said, "Effective November 5, 1977, Dr. Robert Cullen, 108 Webb Avenue, Whitesburg, Kentucky 41858, will be removed from the list of approved doctors and clinics to serve our employees under our health benefits card. No bills will be accepted from Dr. Cullen after this date."

The evidence at trial showed there was no approved list of physicians or clinics maintained by South East Coal Company either before or after this incident. However, as a result of the memo, 151 employees retrieved their files from Dr. Cullen and another 61 requested their files be sent elsewhere. Dr. Cullen's practice dropped from 30 to 40 patients per day to 15 to 20. Monetarily, this translated into a claim for damages for loss in income from November, 1977, to the time of trial, in the sum of $87,553.17. Dr. Cullen testified that some patients inquired as to why the coal company would not let them be treated by him. Naturally, the employees could choose to be treated by Dr. Cullen but they would not have their bills paid by the coal company.

Eventually, Dr. Cullen moved from the Whitesburg area as a result of the appellee's action against him and established a clinic in Pound, Virginia.

The trial court dismissed the case without hearing any testimony in defense. The trial court found the memo to be informational and privileged. The coal company argued that the abuse of the plan provided justification for its action, although there was no evidence of any abuse other than the one instance with Dr. Cullen. Dr. Cullen contends that he made out a prima facie case sufficient to overcome a directed verdict.

We will take Dr. Cullen's assertions of error as they are presented.

### I

THAT PLAINTIFF ESTABLISHED A PRIMA FACIE TORTIOUS INTERFERENCE WITH A PROSPECTIVE BUSINESS ADVANTAGE AND THE TRIAL COURT ERRED IN DIRECTING A VERDICT AT THE CLOSE OF THE PLAINTIFF'S PROOF.

For our purposes, we must examine the trial court's directing a verdict in the light most favorable to Dr. Cullen because he was the nonmoving party to the motion. With that in mind we will look to his argument.

Dr. Cullen relies in particular on the language in *Carmichael-Lynch-Nolan etc. v. Bennett etc.*, Ky.App., 561 S.W.2d 99 (1977), which states, "A party damaged by interference with his contract may recover even though he cannot establish fraud or coercion or a master-servant relationship." This broad language, if considered out of context, would lead one to support Dr. Cullen's position. However, the case further explains the overall basis for this type of tortious conduct which leads us to consider *Restatement (Second) of Torts* § 766B, Intentional Interference with Prospective Contractual Relation (1979):

One who intentionally and *improperly interferes* with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation. [Emphasis ours.]

■ The key to the above is the phrase, "and improperly interferes." It is our conclusion that Dr. Cullen failed to prove the element of improper interference. We accept the fact that South East Coal intentionally sent the memorandum to its employees to accomplish the very thing that it did accomplish: namely, the refusal of the employees and their families to be treated by Dr. Cullen in the future. The improper interference requirement, however, requires closer analysis. In order to arrive at an improper interference conclusion we must consider South East Coal Company's motive, the interest that it is trying to advance or protect, the nature of its conduct, the means used to interfere, and whether or not the interference was based upon malice.

■ Using the criteria just mentioned, we know that South East Coal had an interest in seeking that its totally subsidized health plan was not abused or taken advantage of. Its interest was self-protection and its conduct was not libelous per se, or violent. The means used by the coal company of advising its employees was that which was most reasonable, namely, by memorandum, and we cannot say that any malice was shown or proven by Dr. Cullen after the completion of his proof. So, in this regard, we conclude that the trial court was correct in granting a directed verdict.

## II

THAT DR. CULLEN'S PROOF PRESENTED ISSUES OF FACT FOR JURY SUBMISSION ON LIBEL PER QUOD, AND THE TRIAL COURT ERRED IN DIRECTING A VERDICT AT THE CLOSE OF THE PLAINTIFF'S EVIDENCE.

Dr. Cullen's argument on this point is that while the memorandum distributed to the employees was not libel per se, it was libel per quod by innuendo. The case relied upon is *Sweeney & Co. v. Brown*, 249 Ky. 116, 60 S.W.2d 381 (1933). The case explains libel per quod as being,

words reasonably susceptible of defamatory meaning as well as an innocent one, and may be defamatory by reason of their imputation, or by reason of certain extrinsic facts, connoting they were meant to be, and were, understood by the general public, or those reading them, to have such meaning, and that on receiving them were so construed.

249 Ky. at 120–21, 60 S.W.2d 381.

■ Words (libelous per quod) require evidence of pecuniary loss arising from the use thereof, other than their use to sustain a recovery. *Sweeney & Co., supra*, further stresses the point, "An innuendo, however, cannot enlarge or add to the sense or effect of the words charged to be libelous, or impute to them a meaning not warranted by the words themselves...." 249 Ky. at 121–22, 60 S.W.2d 381.

■ In this regard, Dr. Cullen makes much of the fact that there was no approved list of physicians or clinics maintained by the company and that its lie to this effect is indicative of malice or ill will in the case. We view it as simply a "nice" way of informing the employees. Our conclusion is that there was nothing defamatory in the memorandum sent to the employees. Again, we support the trial judge granting the directed verdict.

Because we have sustained the trial court in its determination that a directed verdict in favor of the South East Coal Company was proper on the grounds that a prima facie case had not been made out by Dr. Cullen, it is not necessary that we discuss issues 3 and 4 lodged by the appellants.

Judgment affirmed.

All concur.