**Paul BURCHETT,**

v.

**GENERAL TELEPHONE COMPANY OF THE SOUTH.**

Civ. A. No. 87–33.

United States District Court, E.D. Kentucky, at Ashland.

April 5, 1988.

John Harlan Callis, III, Perry & Preston, Paintsville, Ky., for plaintiff.

Gregory L. Monge, VanAntwerp, Monge, Jones & Edwards, Ashland, Ky., for defendant.

## MEMORANDUM OPINION

WILHOIT, District Judge.

This matter is before the Court upon defendant's motion for summary judgment. The plaintiff has filed a response and the defendant has filed a reply.

### FACTS

Construed in a light most favorable to the plaintiff, the following facts are relevant to the defendant's motion for summary judgment. Late in 1985 the plaintiff was involved in a domestic dispute with his wife. The plaintiff was arrested and indicted for second degree assault and terroristic threatening. Because of the indictment, the plaintiff was terminated from his employment with the defendant, General Telephone Company of the South ("GTE"). The plaintiff had been an employee of the GTE for approximately 19 years. Although the indictment was subsequently dismissed, the plaintiff was not reinstated.

In the present action, the plaintiff does not challenge his termination. Instead, he attacks a long-standing policy that allows GTE to remove any employee of any contractor working for GTE. Each contractor employed by GTE is required to sign a contract containing a provision that allows GTE to implement this policy. Apparently, this policy has been used to prevent any discharged employee of GTE from working on GTE property. GTE alleges that the sole basis for this policy is to prevent a disgruntled former employee from damaging GTE property. However, the plaintiff asserts that this policy amounts to a virtual blacklisting of former GTE employees who may try to seek employment with other telephone service companies who do contract work for GTE. By its contractual agreements with other businesses, the plaintiff alleges that GTE engaged in a group boycott of his services and placed an unfair and unreasonable restraint and burden upon trade and interstate commerce.

After his termination, the plaintiff has attempted to obtain employment in the same industry. A company called SGI refused to employ the plaintiff because of GTE's refusal to allow the plaintiff access to its premises. The plaintiff declined to accept employment at Morehead State University as a telephone repairman because it was only a part-time position at $5.00 an hour. Also, the plaintiff declined a job offer by Hinkle and McCoy, a construction company that works in the communications business. Although the plaintiff was unclear as to the reason for his refusal to accept employment with Hinkle

and McCoy, he implied that it was because he would have to work out-of-state.

In addition, the defendant asks the Court to take judicial notice of the fact that GTE is not the only telephone company in Kentucky or in this immediate area. The Court does take judicial notice of the existence of other large telephone companies located in West Virginia and Ohio and of many smaller telephone companies and related service industries in Kentucky. In fact, the defendant has attached four letters written to the plaintiff from companies to which he has applied. Not one of those companies makes any mention of the refusal to hire the plaintiff because of a contract with GTE.

## DISCUSSION

As a preliminary matter, the plaintiff asserts that the Court is without power to deal with most of the factual matters in dispute because of the existence of doubt in favor of the plaintiff. However, the non-moving party has a greater burden in challenging factual matters in light of recent case law. While in the past a non-moving party may have been able to defeat a summary judgment motion by showing "the slightest doubt", the current summary judgment standards require the production of more proof. *See generally*, Smith, *Judge Charles E. Clark and the Federal Rules of Civil Procedure*, 85 Yale L.J. 914, 928–31 (1976). Under Rule 56(e)

> [w]hen a motion for summary judgment is made and supported as provided for in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise specified in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Although the moving party has the burden of showing conclusively that no genuine issue of fact exists and all facts and inferences drawn therefrom must be viewed in a light most favorable to the non-moving party, the factual dispute must be both genuine and material. *60 Ivy Street Corporation v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). Further, "[t]he facts must be such that if they were proven at trial a reasonable jury could return a verdict for the non-moving party" and the non-moving party "is required to present *some significant probative* evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Id.* (emphasis added). A discussion of three recent Supreme Court decisions reinforces the need for the non-moving party to provide some support for his position. *See generally* Childress, *A New Era For Summary Judgments: Recent Shifts At The Supreme Court*, 116 F.R.D. 183 (1987).

The arguments presented in the defendant's motion for summary judgment are whether the plaintiff can maintain his claims under these facts. The plaintiff has attempted to assert three claims: intentional interference with prospective contractual relations, outrageous conduct causing severe emotional distress, and a violation of the Sherman Antitrust Act, 15 U.S.C. Section 1.

## INTERFERENCE WITH CONTRACT

The plaintiff alleges that the defendant has violated the tort of intentional interference with prospective contractual relations. An essential element of this tort is the existence of "improper interference". *Cullen v. South East Coal Company*, 685 S.W.2d 187, 189–90 (Ky.App.1983). The improper interference conclusion is reached by an examination of "motive, the interest that it is trying to advance or protect, the nature of the conduct, the means used to interfere, and whether or not the interference was based upon malice." *Id.* at 190. Although Kentucky has adopted the formulation of this tort as set forth by the *Restatement (Second) of Torts* Section 766, Kentucky has not rejected the former requirement of malice. *Carmichael–Lynch–Nolan Advertising Agency, Inc. v. Bennett & Associates, Inc.*, 561 S.W.2d 99, 102 (Ky.App.1977); *Thermothrift Industries,*

*Inc. v. Mono–Therm Insulation Systems, Inc.*, 450 F.Supp. 398, 404 (W.D.Ky.1978).

 The Court is unable to find any evidence of malice. The plaintiff has failed to show any evidence that GTE has adopted this policy with malicious intent or without any justification. As early as 1976, GTE has stated this policy in writing and the plaintiff has admitted that he was aware of this policy prior to his termination. At best, the plaintiff has shown that one company, SGI, refused to hire the plaintiff because of GTE's refusal to allow him on its premises. Moreover, GTE's contact with SGI was precipitated by the plaintiff's request that SGI check with GTE. (Plaintiff's Deposition, p. 14).

Further, the contract provision allowing GTE to terminate employees of any contractor was in force at least 10 years prior to the plaintiff's termination and this policy was not adopted with the malicious intent of preventing the plaintiff's future employment. Apparently, the plaintiff is attempting to show that his termination was made with malice and that this improper motive satisfies the "improper interference" element of the intentional interference with a prospective contract. However, the relevant motive in this action is GTE's motive in including this provision in its contracts with other businesses and the policy behind it. The plaintiff has submitted no proof that this policy and the attendant contract provision was adopted with the malicious intent of preventing the plaintiff from seeking other employment. As a result, the plaintiff has failed to meet his burden of producing "some significant probative evidence" to show that this issue is in dispute.

For these reasons, the defendant's motion for summary judgment on the tort of intentional interference with prospective contractual relations is sustained.

## OUTRAGEOUS CONDUCT

 The plaintiff has also alleged a claim of outrageous conduct causing severe emotional distress. *See Craft v. Rice*, 671 S.W.2d 247, 251 (Ky.1984). The defendant states that the plaintiff has utterly failed to produce any evidence that the defendant's conduct was extreme and outrageous. In response, the plaintiff asserts that *Craft* was a case primarily concerned with the statute of limitations and that the references to outrageous conduct are inapplicable to the case at bar. However, the plaintiff overlooks the definition of extreme and outrageous conduct as recited by Justice Stephenson.

d. *Extreme and outrageous conduct*

The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct had been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.

*Id.* at 251 (dissent) (citing Comments to Section 46 of the *Restatement (Second) of Torts*). No evidence or even reasonable inference has been supplied by the plaintiff that would support a claim for outrageous conduct and the defendant's motion for summary judgment is sustained as to the plaintiff's second claim.

## ANTITRUST VIOLATION

The plaintiff has, in addition, alleged a violation of the Sherman Antitrust Act, 15 U.S.C. Section 1. Apparently, the plaintiff is alleging that GTE's policy has caused him to be blacklisted with other employers in the same field and that such action has caused him injury. The plaintiff has cited a long litany of cases holding that summary judgment should rarely be applied in antitrust litigation. However, the plaintiff has neglected to cite a recent Supreme Court case which held that summary judgment is particularly appropriate in antitrust cases because "antitrust law limits the

range of permissible inferences from ambiguous evidence" in a Sherman Act case. *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986). "When the moving party his carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. at 1356.

Although the plaintiff's counsel has extensively briefed antitrust law in his pretrial memorandum and in his response to the motion for summary judgment, no affidavits or exhibits have been attached to his response and only two depositions have been made a part of the record. The discovery deadline expired on January 15, 1988. On this meager record, the Court must determine if the plaintiff has met his burden of showing at least "some significant probative evidence" to sustain an antitrust violation. The Court also notes that since the plaintiff has the burden of proof at trial, it is even more incumbent upon him to supply evidence of such violations. Moreover, if the factual context renders the plaintiff's claim implausible, then the plaintiff "must come forward with more persuasive evidence to support [his] claim than would otherwise be necessary." *Id.* at 587, 106 S.Ct. at 1356.

■ In order to have standing to bring an antitrust claim, a private litigant must pass two tests. *Malamud v. Sinclair Oil Corporation*, 521 F.2d 1142, 1151 (6th Cir. 1975). First, the plaintiff must allege that the defendant caused him injury in fact. Second, the interest sought to be protected must be "arguably within the zone of interests to be protected or regulated by the statute ... in question." *Id.* (citing *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). "The antitrust laws were enacted to preserve competition and thereby to protect the individual plaintiff and the consuming public from the effects of any combinations or conspiracies in restraint of trade." *Id.* at 152, 90 S.Ct. at 829.

The defendant asserts that the plaintiff has failed to show any injury because of the lack of any evidence that the plaintiff has been deprived of any realistic job opportunities. However, the plaintiff has at least alleged injury because of the refusal of one company, SGI, to employ a person who is not permitted on GTE property. The second requirement for standing is less supportable. If the Court assumes that the plaintiff has been "blacklisted" or is the victim of a "group boycott", then the plaintiff might be within the zone of interests to be protected under the statute. An examination of these matters requires an examination of the merits of the antitrust claim. As a result, the Court will assume that the plaintiff has standing so that the merits of the claim may be examined.

After the standing requirements are satisfied, an antitrust violation may be shown by either of "two complementary categories of antitrust analysis" as follows:

In the first category are agreements whose nature and necessary effect are so plainly anti-competitive that no elaborate study of the industry is needed to establish their illegality—they are "illegal per se." In the second category are agreements whose competitive effect can only be evaluated by analyzing the facts peculiar to the business, the history of the restraint, and the reasons why it was imposed. In either event, the purpose of the analysis is to form a judgment about the competitive significance of the restraint; it is not to decide whether a policy favoring competition is in the public interest, or in the interest of the members of an industry.

*National Society of Professional Engineers v. United States*, 435 U.S. 679, 692, 98 S.Ct. 1355, 1365, 55 L.Ed.2d 637 (1978). The second category applies what is better known as the "Rule of Reason". *Id.* at 687–91, 98 S.Ct. at 1363–65.

■ The plaintiff has attempted to define the contract between GTE and its contractors as a "per se" violation of the Sherman Antitrust Act on the basis of a "group boycott" of the plaintiff or a "blacklisting" of the plaintiff's services. Although both

of these practices have been shown to be per se violations, the facts presented in this action fail to rise to the level of either practice. *See Klor's, Inc. v. Broadway–Hale Stores, Inc.,* 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959); *Quinonez v. National Association of Securities Dealers, Inc.,* 540 F.2d 824, 828–29 (5th Cir. 1976); *Kapp v. National Football League,* 390 F.Supp. 73 (N.D.Cal.1974), *aff'd,* 586 F.2d 644 (9th Cir.1978), *cert denied,* 441 U.S. 907, 99 S.Ct. 1996, 60 L.Ed.2d 375 (1979). In *Quinonez,* the plaintiff was unable to obtain employment as a security sales representative because of alleged blacklisting arising out of an express or tacit agreement between national securities firms not to hire anyone who had been fired or dismissed from any firm. *Quinonez* at 826. However, in the case at bar, the plaintiff has failed to show that GTE's policy prevents his employment with different companies who do not work on GTE property. The Supreme Court found that "group boycotts, or concerted refusals by traders to deal with other traders, have long been held to be in the forbidden category." *Klor's,* 359 U.S. at 212, 79 S.Ct. at 709. A wide combination of traders acting in concert to prevent a single retailer from selling certain household appliances was held to be an illegal group boycott. *Id.* at 213–14, 79 S.Ct. at 710.

■ However, in the case at bar, the plaintiff has failed to submit any proof that the agreements between GTE and its contractors were for the purpose of "blacklisting" the plaintiff or organizing a "group boycott" of his services. The plaintiff has not shown how these agreements would affect his employment with a company that did not do contract work for GTE. In fact, the agreements would force the plaintiff to work for competitors of GTE because he would have to be employed by a company that was not permitted on GTE property. In order to support a per se violation, the plaintiff would have to show that the "motive behind the concerted action or the direct effect of the action or both is anti-competitive." *Cesnik v. Chrysler Corporation,* 490 F.Supp. 859, 866 (M.D.Tenn.1980). Even if the restraint of trade is viewed as

the plaintiff's ability to practice the skills of his profession, the plaintiff has not shown that the agreements would prevent his employment with companies who do not work on GTE property. At best, the plaintiff can show that his termination from GTE has made it more difficult for him to obtain employment in this immediate area. However, the cause for this result is the size of GTE and its decision to prevent discharged employees from working on its property and not any anti-competitive motive.

■ Since the agreements have not been shown to be illegal per se, the plaintiff must show at least "some significant probative evidence" of the violation of the "Rule of Reason". The competitive effect of the agreements must be examined by looking at the history of the restraint and the reasons why it was imposed. *National Society,* 435 U.S. at 692, 98 S.Ct. at 1365. The only evidence that the Court can find that relates to the reasons behind the agreements with the contractors is a statement by William Spears, personnel manager for GTE. Mr. Spears stated that the purpose of the contract provision was a "prudent business decision" to prevent harm to the company and its employees. (Spears Deposition, pp. 17–18). Although this statement is self-serving, no evidence has been submitted by the plaintiff that would indicate any other possible motive behind this policy. Clearly, the purpose of the policy is to prevent the possibility of damage to GTE property by disgruntled employees. Assuming that the agreements pose a restraint on competitive conditions, these agreements are a reasonable restraint because of the purpose of preventing destruction of property.

Any other conclusion based upon the factual context that has been presented is implausible and the plaintiff has failed to met his burden of coming forward with more persuasive evidence than would otherwise be necessary. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. For these reasons, the defendant's motion for summary judgment on the violation of the Sherman Antitrust Act is sustained.

## JUDGMENT

For the reasons stated in a memorandum opinion of even date, the Court sustains the defendant's motion for summary judgment.

Accordingly, having reviewed the entire record and being sufficiently advised,

IT IS THEREFORE ORDERED AND ADJUDGED:

(1) that the defendant's motion for summary judgment is SUSTAINED;

(2) that summary judgment is GRANTED for the defendant, General Telephone Company, on all claims of the plaintiff;

(3) that this is final and appealable order.

This 5 day of April, 1988.