909 F.2d 1484
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
L. Alan PARRISH, Plaintiff-Appellant,
v.
FORD MOTOR COMPANY, Defendant-Appellee.
 No. 89-6290.
 United States Court of Appeals, Sixth Circuit.
 Aug. 2, 1990.
 
 Before MILBURN and DAVID A. NELSON, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an action for, among other things, a purported violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. Secs. 621, et seq. A magistrate ruled in favor of the defendant employer on various nondispositive matters, and also recommended a grant of partial summary judgment for the employer on the ADEA claim. When these matters came before the district court on objections filed by the plaintiff, the court entered an order in which, citing 28 U.S.C. Sec. 636(b)(1)(A) and Rule 72(a), Fed.R.Civ.P., the court stated that the magistrate's recommendations were not "clearly erroneous or contrary to law."
 
 
 2
 The magistrate subsequently recommended a grant of summary judgment for the defendant on the remaining claims asserted by the plaintiff. (These included claims of "outrageous conduct" or intentional infliction of emotional distress, defamation, and retaliation.) Again the district court accepted the magistrate's recommendations. This time, however, the court made de novo determinations on the portions of the magistrate's report to which the plaintiff objected.
 
 
 3
 The plaintiff raises five issues on appeal: (1) whether the district court erred in failing to conduct a de novo examination of the ADEA claim; (2) whether the district court erred in accepting the magistrate's conclusion that the "continuing violation" and "equitable tolling" doctrines did not prevent the ADEA claim from being barred by reason of the plaintiff's failure to file an administrative charge within 300 days of the alleged discrimination; (3) whether the district court erred in granting summary judgment before the plaintiff had been able to obtain more of the discovery he sought; (4) whether there were genuine issues of material fact that would bar summary judgment; and (5) whether the district court abused its discretion in denying leave to amend the complaint to add class-action allegations.
 
 
 4
 We shall vacate the judgment on the ADEA claim, not being satisfied that the district court conducted the necessary de novo review, and we shall direct the district court to consider, in connection with its review, whether additional discovery should be allowed with respect to that claim. The rulings of the district court on the remaining matters will be affirmed.
 
 
 5
 * Plaintiff L. Alan Parrish began his employment with defendant Ford Motor Company in 1965. He worked his way up through the ranks, and in May of 1984, despite certain health problems, he was promoted to the job of production manager of Ford's Kentucky truck plant.
 
 
 6
 In October of 1985 Mr. Parrish met with plant officials to discuss his potential for further promotion. A tape-recording of the meeting, made by Parrish surreptitiously, indicates that Plant Manager Jim Whyte expressed the opinion that there was an age-based "window" for promotion at Ford; Whyte thought Parrish, at 46 years of age, was beyond the age of promotability. "It's practiced policy," Whyte said. Ford admits that these statements were made, but denies that they reflect Ford's practice or policy.
 
 
 7
 In November of 1986 Parrish again met with Whyte and others to discuss promotion prospects. At that meeting, also tape-recorded, Whyte told Parrish that "they are looking for people that can go through the organization and have some years left in them when they get to my position [plant manager]," and you have to move "basically by the time you are 40 years old."
 
 
 8
 At a meeting in February of 1987 Whyte told Parrish that "I've never questioned your ability," but "[a]s you get older age works against you in some respects. It's a fact of life." "[In h]indsight," Parrish responded, "I should have moved sooner. I am 48 and I'm too damned old." Whyte replied, "In fairness, yes you are." Parrish nevertheless requested a lateral transfer to another Ford location in the hope that it would improve his chances for promotion. Industrial Relations Manager Jim Henry told Parrish that he "could probably get [Parrish] a transfer out," a move that "may or may not get [Parrish] an assistant plant manager's job."
 
 
 9
 In June of 1987 Mr. Parrish was admitted to the Duke University Medical Center for ten days due to chest pain and urticaria, a skin condition. He admitted that he had suffered chest pains as early as 1982, but one of his treating physicians attributed the health problems to his having been told he was too old to be promoted.
 
 
 10
 Parrish began an extended medical leave on August 31, 1987. He was still on leave in November of 1987, when Assistant Plant Manager George Kormanis prepared a job performance appraisal that rated Parrish "satisfactory minus"--the second lowest possible rating--despite Parrish's "excellent high" ratings from 1982-1985.* Pursuant to standard procedure, Kormanis reviewed this appraisal with various officials at the plant and at Ford headquarters. Because Parrish was on leave, the appraisal was not reviewed with him personally. Neither was it placed in his personnel file.
 
 
 11
 Parrish's doctors having forbidden him to return to work as production manager, but a Ford doctor having expressed the opinion that Parrish could perform less stressful work, Ford suggested in January of 1988 that he accept an opening in the plant's sales department. Although the job carried a lower grade level (10 rather than 12) and fewer fringe benefits, it would have allowed him to retain the same salary. After conferring with his psychiatrist, Parrish decided not to accept the sales job.
 
 
 12
 On February 15, 1988, a week before his medical leave was scheduled to end, Parrish met at the truck plant with Jim Henry and Supervisor of Salaried Personnel Mike Chipman to discuss what would happen next. Henry and Chipman told Parrish that if he did not return to work at the end of his leave, he would be "taken off the rolls." This would involve his being placed on inactive status and losing certain fringe benefits. (According to Henry's affidavit, executives at the Kentucky truck plant had no authority to extend Parrish's medical leave beyond February of 1988. The leave was eventually extended by Ford headquarters.)
 
 
 13
 On February 23, 1988, Parrish filed an administrative age discrimination charge with the Kentucky Commission on Human Rights and the United States Equal Employment Opportunity Commission. On June 3, 1988, more than 60 days having elapsed after the filing of the charge (see 29 U.S.C. Sec. 626(d)), Parrish commenced the present litigation by filing a complaint in the United States District Court for the Western District of Kentucky.
 
 
 14
 The complaint alleged that Ford had "denied Parrish promotion and/or the possibility of promotion continuously since 1984 to February 23, 1988, solely because of Parrish's age." The complaint was subsequently amended to add allegations on efforts to mitigate damages and to add claims for intentional infliction of emotional distress, defamation, and retaliation.
 
 
 15
 Discovery proceedings were begun promptly after the filing of the complaint, and Parrish took four depositions in July of 1988. Among them were the depositions of Whyte, Henry, and Kormanis. In October of 1988 Parrish served interrogatories and document production requests that may have been designed, in part, to develop support for a class action. Ford objected to many of these discovery requests, and such information as the company furnished appears to have been rather limited in scope. It is not clear to us whether Ford was or was not sufficiently forthcoming with information as to what career development opportunities might have been open to Parrish, but for his age, in other parts of the country during the relevant time frame.
 
 
 16
 In November of 1988 the district court entered an order referring the case to a magistrate. In addition to being directed to conduct a scheduling conference, the magistrate was instructed to determine "all non-dispositive matters," in accordance with 28 U.S.C. Sec. 636(b)(1)(A), and to submit findings of fact and recommendations for disposition of "all other matters," in accordance with 28 U.S.C. Sec. 636(b)(1)(B).
 
 
 17
 In December of 1988 Parrish moved for leave to file an amended complaint that would have added class action allegations. The magistrate denied the motion. Parrish filed timely objections to this ruling, but the district court agreed with the magistrate that leave to amend should be denied.
 
 
 18
 In the same month in which Parrish tendered his class action amendment, Ford moved for partial summary judgment on the ADEA claim. This motion was soon followed by one in which Ford moved for summary judgment on the remaining claims. On March 2, 1989, the magistrate stayed all discovery pending disposition of both motions. Parrish objected, but the district court sustained the stay. The court also denied a motion filed by Parrish to compel discovery.
 
 
 19
 As to Ford's motion for summary judgment on the ADEA claim, the magistrate recommended granting the motion on the ground that Parrish had failed to file his EEOC charge within 300 days after learning of the occurrence of the alleged unlawful practice. (See 29 U.S.C. Sec. 626(d), imposing a 300-day limitation period in states that have discrimination laws like Kentucky's.) Parrish filed a timely objection to this recommendation. The district court dealt with the matter in the same order in which it sustained the magistrate's stay of discovery and denial of leave to amend the complaint. Without differentiating between the summary judgment motion (a "dispositive motion" under Rule 72(b), Fed.R.Civ.P.), and the discovery matters and class action amendment ("nondispositive matters" under Rule 72(a), Fed.R.Civ.P.), the court expressed itself as follows:
 
 
 20
 "After having read the voluminous pleadings on both sides and having considered the case law cited therein and acknowledging the impressive, herculean efforts of the Plaintiff's attorneys to convince this Court to reverse the Magistrate's recommendations, this Court still remains unconvinced that the Magistrate's recommendations are 'clearly erroneous or contrary to law.' 28 U.S.C. Sec. 636(b)(1)(A); Fed.R.Civ.P. 72(a)." (Emphasis supplied.)
 
 
 21
 "Thus," the court's order continued, the summary judgment motion on the ADEA claim was granted. Parrish's motions to amend the complaint and compel discovery were denied, and all discovery was stayed pending disposition of the motion for summary judgment on the remaining claims. The court's order dealt with all of these matters in a brief two pages.
 
 
 22
 The magistrate subsequently recommended granting Ford's remaining summary judgment motion. In an order reciting that the court had reviewed the disputed portions of the magistrate's latest report de novo, the district court accepted the recommendation and granted the motion. This appeal followed.
 
 II
 
 23
 Under 28 U.S.C. Sec. 636(b)(1)(A), which was cited by the district court in the order granting summary judgment on the ADEA claim, "any pretrial matter ... except [among other things] a ... motion for summary judgment" may be referred to a magistrate for hearing and determination. Determinations made by the magistrate under Sec. 636(b)(1)(A) are subject to reconsideration by the district court where "clearly erroneous or contrary to law." Id.
 
 
 24
 Under 28 U.S.C. Sec. 636(b)(1)(B), in contrast, summary judgment motions and other motions excepted in subparagraph (A) may be heard by a designated magistrate not for "determination," but for submission to a district judge of "proposed findings of fact" and "recommendations" for disposition. Id. Following this section, which was not cited by the district court in its ADEA claim ruling, the statute provides that "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."
 
 
 25
 The statutory distinction between dispositive and nondispositive motions is carefully preserved in Rule 72, Fed.R.Civ.P. Rule 72(a) authorizes only nondispositive matters to be decided by magistrates, with objections to the magistrate's orders on such matters being reviewed by the district court under a "clearly erroneous" standard. Id. Rule 72(b) provides that hearings on dispositive motions (motions for summary judgment, e.g.) may be conducted by the magistrate, who "shall enter into the record a recommendation for disposition of the matter, including proposed findings of fact when appropriate." Id. Where objections to the recommendation are filed, "[t]he district judge ... shall make a de novo determination upon the record, or after additional evidence...." Id. See, generally, Brown v. Wesley's Quaker Maid, Inc., 771 F.2d 952, 954 (6th Cir.1985), cert. denied, 479 U.S. 830 (1986).
 
 
 26
 In its ruling on the second summary judgment motion filed by the defendant in this case, the district court recognized, correctly, that the magistrate's recommendation was to be reviewed de novo. In granting the summary judgment motion on the ADEA claim, however, the court explained its ruling, as we have seen, by stating that after reading the pleadings on both sides, the court remained unconvinced that the magistrate's recommendations were "clearly erroneous or contrary to law."
 
 
 27
 That is not the test, of course. The district judge was required independently to consider the record developed by the magistrate. Hill v. Duriron Co., 656 F.2d 1208, 1214 (6th Cir.1981). Perhaps the judge did in fact consider the record independently here and, after making a de novo determination, misspoke himself in announcing the result; we cannot be sure that this is what happened, however, and it would be unfair to the plaintiff for us to make any such assumption.
 
 
 28
 If the record were less voluminous, we might be tempted to conduct the necessary de novo review ourselves, as we have authority to do. See Brown, 771 F.2d at 955. Given the nature of this record, however, we believe that the interests of judicial economy would be better served by a remand.
 
 
 29
 We are strengthened in this belief by uncertainty as to whether the plaintiff does not have a legitimate basis for demanding a fuller response to his discovery requests. Although the plaintiff points to no position at the Kentucky truck plant to which he was denied promotion on age grounds, it is conceivable that his age was a determining factor in his not being selected for a better job elsewhere in the country at some point within 300 days of the filing of the EEOC charge. (Presumably he would not have been selected for a better job when his health made it impossible for him to perform the job he already held, but Parrish was able to work during the initial part of the 300-day period.) The district court is more familiar than we are with the discovery that has been provided and with what Ford has declined to provide, and because the district court must conduct a de novo review of the record in any event, we think it best to let that court reexamine the discovery issue at the same time.
 
 III
 
 30
 * To establish a prima facie case of retaliation, the plaintiff must show: (1) that he engaged in protected activity; (2) that he was subjected, either contemporaneously or subsequently, to an adverse employment action; and (3) that a causal connection existed between the protected activity and the adverse action. Jackson v. Pepsi Cola, Dr. Pepper Bottling Co., 783 F.2d 50, 54 (6th Cir.), cert. denied, 478 U.S. 1006 (1986). Parrish claims that Ford retaliated against him both because of his stated opposition to the company's alleged policy of age discrimination and because of his filing of the EEOC charge. Adverse employment actions are supposed to have ensued in the form of the relatively poor evaluation prepared in November of 1987 and the "threat of demotion" made in February of 1988.
 
 
 31
 Neither of these incidents can be linked causally to Parrish's EEOC charge, because both of them occurred before the charge was filed. Nor does either constitute a true adverse employment action. The evaluation was never placed in Parrish's personnel file, and because he has never returned to work, the evaluation could have had no adverse impact on him in any event. What Parrish calls a "threatened demotion" was merely the result of the scheduled termiantion of his sick leave. It is true that Parrish was given to understand that he could keep his company cars and certain other benefits only as long as he was on approved medical leave, but there has been no rebuttal of the evidence that no one at the truck plant could extend the medical leave beyond its scheduled termination date. Parrish was never "demoted," nor was he discharged; he remains a Ford employee to this day. We see in this picture no material fact issue that could defeat Ford's right to summary judgment on the retailiation claim.
 
 B
 
 32
 Parrish's claim of defamation is also based on the 1987 evaluation. A writing is defamatory if, construed as a whole, it tends to bring a person into public hatred, ridicule, or contempt, to cause him to be shunned, or to injure him in his business or occupation. McCall v. Courier-Journal & Louisville Times Co, 623 S.W.2d 882, 884 (Ky.1981), cert. denied, 456 U.S. 975 (1982). The plaintiff may recover if he demonstrates by a preponderance of the evidence that the defendant failed to exercise reasonable care in checking the truth or falsity and the defamatory nature of the communication before publishing it. Id. at 886. Intracorporate communications necessary to the company's functioning, such as performance appraisals, enjoy a qualified privilege that can be defeated only by a showing of malice. Caslin v. General Electric Co., 608 S.W.2d 69, 70-71 (Ky.App.1980). Whether the communications are privileged is a question of law. Id. at 71.
 
 
 33
 Parrish relies on a line of Kentucky cases indicating that malice is presumed where the plaintiff proves the statements are false, see Tipton v. Raines, 228 Ky. 677, 15 S.W.2d 496, 497 (1929); Begley v. Louisville Times Co., 272 Ky. 805, 115 S.W.2d 345, 351 (1938), but Parrish has not cited, nor have we found, any case applying this presumption in the context of intracorporate communications. And whether or not Kentucky would allow the presumption to be invoked in this context, Parrish has failed to raise a question of fact as to the truth of the report.
 
 
 34
 Parrish claims that the report was false in two respects. First, the report stated that "[n]o significant improvement in cost performance was achieved until the 4th quarter of 1987," which was after Parrish had gone on extended medical leave. An improvement was in fact achieved in early 1987, but Parrish has not shown that it was "significant" compared to the improvement in the final quarter of that year. Second, the report stated that areas of perceived deficiencies in Parrish's performance were discussed with him on March 14, 1987. There is no support in the record for the belated contention that no such discussion occurred. Although Parrish was told that he was "the best man for the job" of production manager, there is nothing in his deposition or elsewhere indicating that deficiencies were not discussed.
 
 C
 
 35
 To establish intentional infliction of emotional distress, the plaintiff must show that the defendant, by extreme and outrageous conduct, intentionally or recklessly caused the plaintiff severe emotional distress. Craft v. Rice, 671 S.W.2d 247, 251 (Ky.1984). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Burchett v. General Telephone Co., 699 F.Supp. 114, 117 (E.D.Ky.1988), quoting Restatement (Second) of Torts Sec. 46, comment d. Summary judgment is appropriate where there is no evidence of sufficiently extreme conduct. Burchett, 699 F.Supp. at 117.
 
 
 36
 Characterizing Parrish's claims in this regard as "frivolous," the magistrate concluded that no reasonable jury could find Ford's conduct "outrageous." We agree. The questioned conduct consisted of failing to promote Parrish to some unspecified position, preparing an unenthusiastic evaluation on him, opening his mail (company documents sent to him at work while he was on sick leave), directing him to return to a job with a lower pay grade, lying under oath in a deposition, and telling another employee that it was hard to sell that employee to headquarters because of his age. Perjury committed during litigation cannot serve as a basis for a claim of intentional infliction of emotional distress. Lawson v. Hensley, 712 S.W.2d 369, 370 (Ky.App.1986). Retaliation for filing an EEOC claim may constitute outrageous conduct, see Coker v. Daniel Construction Co., 664 F.Supp. 1079 (W.D.Ky.1987), aff'd, 848 F.2d 189 (6th Cir.1988), but as noted above, Parrish's retaliation claim is not supported by the record. The only evidence relating to the opening of mail is that Parrish's superior asked to look at company documents being sent to him while he was on disability leave, a perfectly reasonable course of conduct. Given what is left, no jury could find the defendant's conduct "to go beyond all possible bounds of decency," or to be "utterly intolerable in a civilized society."
 
 IV
 
 37
 Denial of leave to amend a complaint is subject to review under an abuse of discretion standard, although any predicate legal conclusions must be reviewed de novo. Martin v. Associated Truck Lines, Inc., 801 F.2d 246 (6th Cir.1986). The magistrate cited two reasons for denying Parrish leave to present claims on behalf of "all present and past ... employees of Ford Motor Company ... similarly situated to himself;" (1) Parrish's EEOC claim gave insufficient notice of class-based discrimination, and (2) Parrish did not show that his situation was similar to that of other members of the proposed class. The first consideration alone is sufficient to support the ruling. It is well-established that if a plaintiff is to maintain a class action for ADEA violations, his EEOC charge must at least contain an allegation of class-wide discrimination. See Anderson v. Montgomery Ward & Co., Inc., 852 F.2d 1008, 1016 (7th Cir.1988), and cases cited therein. The magistrate neither abused his discretion nor committed an error of law in concluding, notwithstanding the reference to Ford's "practiced policy," that Parrish's EEOC charge made no adequate claim of class-based discrimination.
 
 
 38
 The summary judgment on the retaliation and non-ADEA claims is AFFIRMED, as is the denial of leave to amend the ADEA claim. The summary judgment on the ADEA claim is VACATED, and the case is REMANDED for further proceedings not inconsistent with this opinion.
 
 
 
 *
 The performance ratings were on a scale of unsatisfactory, satisfactory minus, satisfactory, excellent, excellent high, and outstanding. "Promotability" was rated separately